IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD WALKER (#852952),

        Plaintiff,

    v.

THOMAS MONAHAN, *et al.*,

        Defendants.

Case No. 06 C 2995

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Plaintiff, a pretrial detainee in the custody of the Illinois Department of Human Services, is facing civil commitment under the Illinois Sexually Violent Persons Commitment Act, 725 ILCS § 7/1, *et seq.* The Plaintiff has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Plaintiff claims that the Defendants, D.H.S. employees and contractors, violated the Plaintiff's constitutional rights by acting with deliberate indifference to his safety, by subjecting him to inhumane conditions of confinement, and by denying him due process and equal protection. This matter is before the Court for ruling on the Defendants' Motions to Dismiss the Complaint for Failure to State a Claim. For the reasons discussed in this order, the Motions are denied.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972);

see also *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. \_\_\_\_, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of FED. R. CIV. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Thompson*, 362 F.3d at 971. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the

court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.,* 127 S.Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, (2002). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 127 S.Ct. at 1965. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## I.  BACKGROUND

The Plaintiff alleges the following facts, which must be accepted as true for purposes of this motion. (A plaintiff may assert additional facts in his response to the motion to dismiss, so long as the new allegations are consistent with the complaint. *Brokaw v. Mercer County*, 235 F.3d 1000, 1006 (7th Cir. 2000); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).) On February 23, 2006, Defendant Graham informed the Plaintiff that

he was being transferred from A-unit to B-unit and ordered him to pack his personal property. Graham was aware that the Plaintiff's new cell mate was a known enemy who had previously threatened to kill the Plaintiff. The proposed cell mate also had a history of sexual assault and other acts of violence against his fellow detainees. Out of fear for his safety, the Plaintiff refused to move.

As a result of his refusal, the Plaintiff was placed in "secure management status" (or administrative segregation) pending a disciplinary hearing. All personal property, including his mattress, blanket, items of personal hygiene, medication, and even his eyeglasses were removed from his cell. The Plaintiff was not afforded a hearing or any other due process before being subjected to a cold "strip cell." The orders to move and to punish the Plaintiff were with the knowledge and direction of Defendants Monahan, Sanders, Strock, Jumper, and Chankin, all of whom were aware of the Plaintiff's history with his proposed inmate. Defendants Franzen, Akpan, Gripshover, and Meecham denied the Plaintiff's oral and written requests to return his property. Defendant Aden denied the Plaintiff's grievance and Defendant Monahan concurred in the denial.

The Plaintiff is African American. On the same day the Plaintiff was disciplined, two white residents who also refused to

accept new housing assignments were permitted to retain all of their personal property.

Defendants Monahan, Sanders, Strock, Jumper, and Chankin implemented and enforced racially biased policies and procedures. Black and white detainees were segregated from each other. White detainees were allowed to choose their cell mates so long as they selected other white cell mates; black detainees were not. In addition, harsher sanctions were imposed on black detainees than on white detainees for rule infractions.

## II. DISCUSSION

The Defendants' Motions to Dismiss the Complaint for Failure to State a Claim are denied. Accepting the Plaintiff's allegations as true, the Court finds that the complaint sets forth colorable causes of action under 42 U.S.C. § 1983.

### A. Equal Protection

The Plaintiff claims that both housing assignments and decisions to punish detainees were made on the basis of race. If the Plaintiff's allegations are true, he may be entitled to redress for both violations. Discrimination between prisoners on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *Antonelli v. Sheehan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (because plaintiff "suggests discriminatory motives impelled discriminatory treatment of him, he has stated an equal protection claim."). In

*Johnson v. California*, 543 U.S. 499 (2005), an African-American inmate brought suit under 42 U.S.C. § 1983 challenging the state prisons' policy of placing new or transferred inmates with cell mates of the same race during their initial evaluation. Although the Supreme Court did not decide whether the Department of Corrections policy violated the Equal Protection Clause, it held that such practices are "highly suspect" and therefore subject to strict scrutiny. *Johnson*, 543 U.S. at 515. Accordingly, the Plaintiff may further develop his claim that detainees were assigned cells and cell mates on the basis of their race. The Plaintiff may likewise pursue his claim that black inmates were punished for refusing housing assignments while white inmates went unpunished for the same infraction. The Plaintiff has articulated colorable equal protection claims.

### B. Conditions of Confinement in Secure Management Status/Disciplinary Segregation

The Constitution required the Defendants to house the Plaintiff under "humane conditions" and to provide him with "adequate food, clothing, shelter, and medical care." *Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, *2 (N.D. Mar. 3, 2006) (Conlon, J.), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Like a pretrial detainee, a sexually violent person may not be subjected to conditions that amount to "punishment" without due process. *See, e.g., Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). "Persons who have been involuntarily committed are entitled

to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). "[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001); *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003).

In this case, the circumstances described by the Plaintiff (particularly sleeping on the floor without a mattress or a blanket in February, as well as being denied eyeglasses and medication) raise an inference that the Plaintiff endured impermissible conditions of confinement. Depending how long the Plaintiff endured these conditions, they may have risen to the level of a constitutional violation. *See, e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegations of low temperatures and pest infestation were actionable under the Civil Rights Act); *Dixon v. Godinez*, 114 F.3d 640, 646 (7th Cir. 1997) (common problems may rise to the level of a constitutional violation if they exist for a prolonged period). The Plaintiff alleges, arguably, unconstitutional conditions of confinement while in segregation.

### C. Disciplinary Proceedings

#### 1. *Placement in Pre-Hearing Secure Management Status*

The Plaintiff alleges that he was punished without due process for refusing to accept a known enemy as a cell mate. The court

agrees with the Defendants that the Plaintiff was not entitled to due process before being placed in secure management status prior to a disciplinary hearing. As a civil detainee, the Plaintiff's situation is akin to that of a pretrial detainee, and thus the Fourteenth Amendment governs. *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). In the pretrial detainee context, the U.S. Court of Appeals for the Seventh Circuit ruled that inmates are not entitled to a pre-deprivation hearing. *See Holly v. Woolfolk*, 415 F.3d 678, 681 (7th Cir. 2005). "Due process permits an arrest without a previous hearing because it is dangerous to allow a person who the police have probable cause to believe has committed a crime to roam at large while awaiting a hearing. It is equally dangerous to allow a prisoner who the guards have probable cause to believe has violated a disciplinary rule to roam at large in the general jail population." *Holly*, 415 F.3d at 681. "[T]he isolation of a prisoner pending investigation of misconduct charges against him serves important institutional interests. . . ." *Id., quoting Hewitt v. Helms*, 459 U.S. 460, 473-74 (1983). It is irrelevant whether the Plaintiff was exhibiting threatening or assaultive behavior; facility officials were acting within their discretion in placing the Plaintiff on secure status pending investigation into his reported rule-breaking.

## 2. *The Challenged Disciplinary Hearing*

Although the Plaintiff's own exhibits seem to indicate that he was afforded a hearing that satisfied due process, he will be permitted to pursue that claim, as the record is not unequivocal on that count. The Seventh Circuit Court of Appeals addressed discipline and related behavioral restrictions as to the State of Wisconsin's Sexually Violent Persons Commitment Program in *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003), and held:

> To the extent that plaintiffs are uncontrollably violent, and thus pose a danger to others, Wisconsin is entitled to hold them in segregation for that reason alone; preserving the safety of the staff and other detainees takes precedence over medical goals. So we said in *Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002). . . . Just as a pretrial detainee may be put in isolation–indeed, may be **punished** for violating institutional rules, provided that the jailers furnish notice and an opportunity for a hearing, see *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) – so a civil detainee may be isolated to protect other detainees from aggression. Institutions may employ both incapacitation and deterrence to reduce violence within their walls. . . . (emphasis in original).

The withdrawal of positive incentives is intended to discourage misbehavior and encourage appropriate activities. 59 Ill. Admin. Code 299.600.

Nevertheless, despite the availability of disciplinary sanctions, as well as the wide latitude afforded the TDF staff in their management of the detainees in their care, the court

correctional officials do not have *carte blanche* to discipline civil detainees. Even in upholding disciplinary measures in the SVP setting, the Court of Appeals in *West, supra*, 333 F.3d at 748, took care to note that detainees must receive notice and an opportunity to be heard.

In short, while officials had the authority to punish the Plaintiff for misconduct, he was constitutionally entitled to procedural due process in connection with the disciplinary hearings. Civil detainees are entitled to at least the same basic procedural safeguards accorded to pretrial detainees and convicts. The Court entirely adopts Judge Kocoras' well-reasoned opinion in *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 WL 265177 (N.D. Ill. Feb. 25, 2002) as it relates to due process protections required in disciplinary proceedings against civil detainees.

Under *Ehrlich*, sexually violent persons facing discipline are entitled to the following basic safeguards in order to satisfy the Due Process Clause: (1) advance written of the charges against the inmate at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence, when consistent with institutional safety and correctional goals; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action; and (4) a decision supported by "some evidence" in the record. *Ehrlich*, 2002 WL 265177 at *4, *citing Superintendent, Massachusetts Correctional*

*Inst. v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 56-67 (1974). In light of the above legal framework, the court is unwilling to dismiss the Plaintiff's disciplinary claims on the basis of the undeveloped record.

### D. Personal Involvement

Certain Defendants contend that the Plaintiff has failed to allege their personal involvement in the events giving rise to this action. It is true that liability under 42 U.S.C. § 1983 requires a defendant's direct, personal involvement. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must, in other words, act either knowingly or with deliberate, reckless indifference." *Id.*

Nevertheless, *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), teaches that dismissal of a *pro se* complaint on grounds of

lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement. In that case, the Court of Appeals found that an inference of involvement was justified to sustain claims asserted against certain senior officials, such as the county sheriff or the prison warden, where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29. In the case at bar, the Plaintiff's claims of discrimination and inhumane conditions implicate non-localized, systemic violations.

The Plaintiff was not required to spell out in his complaint precisely how each, individual Defendant may have wronged him. The Plaintiff alleges that the various Defendants were either employed in his housing unit or sat on the behavior committee. He maintains that he spoke to or wrote to each of the Defendants, all of whom were "well informed" of his situation and "personally involved up to their necks."

Under federal notice pleading standards, "complaints need not set out . . . comprehensive factual narratives." *Rapid Test Products, Inc. v. Durham School Services, Inc.*, 460 F.3d 859, 860 (7th Cir. 2006); *see also Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006) ("One pleads 'claims' (which is to say, grievances)

rather than legal theories and factual specifics."). Instead, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006).

In the case at bar, the complaint provides the Defendants with fair notice of the Plaintiff's claims against them; any "further questions as to the specific legal theories and specific claims brought against the individual defendants is properly left to the discovery stage." *QSRSoft, Inc. v. Restaurant Technology, Inc.*, No. 06 C 2734, 2006 WL 3196928, *3 (N.D. Ill. Nov. 2, 2006) (der-Yeghiayan, J.). The Defendants' reliance on earlier case law requiring heightened pleading, as well cases on conspiracy pleading, is misplaced. The court finds that the Plaintiff's collective referral to the Defendants is permitted by the federal pleading rules. Of course, in order to survive a motion for summary judgment, the Plaintiff will have to demonstrate the direct, personal involvement of each named Defendant. However, his complaint is sufficient to defeat the motion to dismiss.

### E. Qualified Immunity

Finally, the Defendants' motion to dismiss on grounds of qualified immunity is denied. "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (2001), *citing Jacobs v.*

*City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . ." *Id.* Defendants may wish to renew their affirmative defense of qualified immunity in a properly supported motion for summary judgment.

### III. <u>CONCLUSION</u>

For the reasons stated herein, certain Defendants' Motions to Adopt the other Defendants' Motions to Dismiss are granted. The Defendants' Motions to Dismiss are denied. The Defendants are directed to answer or otherwise plead within twenty-one days of the date of this order.

**IT IS SO ORDERED.**

                                  Harry D. Leinenweber, Judge
                                  United States District Court

Dated:   September 10, 2007